United States District Court
Southern District of Texas
**ENTERED**
April 01, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| LORENA CUNDARI and MICHELE PISZCZOR, | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 7:25-CV-00005 |
| THE CITY OF PHARR, TEXAS, | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

In January 2023, a pack of dogs fatally attacked 91-year-old Estela Manteca in her own home. The dogs were owned by her son. Following Manteca's death, her daughter, Lorena Cundari, and granddaughter, Michel Piszczor, sued the City of Pharr, Texas ("the City"). They allege that the City knew that the dogs were dangerous and failed to address the issue. Cundari and Piszczor contend that they have suffered severe emotional trauma as a direct result of witnessing the aftermath of the attack and the City's failure to protect their relative.

Pending before the Court is the City's Motion to Dismiss for Failure to State a Claim for Relief. (Dkt. No. 7). For the following reasons, the Court **GRANTS** the Motion. (*Id.*). Piszczor's claims are **DISMISSED with prejudice** and Cundari's claims are **DISMISSED without prejudice**. (Dkt. No. 1).

## I.   BACKGROUND[1]

Estela Manteca lived with her son, Alex Aranda, and his dogs at a home in Pharr, Texas. (Dkt. No. 1 at 1). In January 2023, Manteca was attacked by her son's dogs, leaving her in a coma and requiring the amputation of both legs. (*Id.* at 2). She eventually succumbed to her injuries and died in May 2023. (*Id.*).

Before the attack, family members and "other concerned individuals" allegedly notified the City[2] about the dogs' dangerous behavior. (*Id.* at 1–2, 5). On January 24, 2022, the City issued a Vicious Dog Declaration for several of Aranda's dogs. (*Id.* at 5–6); (*see also* Dkt. No. 1-1 at 16–33). The City allegedly "failed to follow up to ensure compliance" with any of the dogs cited that day. (Dkt. No. 1 at 5–6). In January 2023, before the attack, the City issued a Notice of Impoundment for Destruction for one of Aranda's dogs after he allegedly attacked another individual. (*Id.* at 6). Cundari and Pisczor allege that Aranda has recently "accumulated another large number of dogs on the same property," which the City failed to remove. (*Id.* at 8).

Cundari and Piszczor brought suit, alleging that they have suffered severe emotional trauma as a result of the City's mishandling of the dangerous dogs. (*Id.* at 3). Specifically, Cundari and Piszczor assert four causes of action under 42 U.S.C. § 1983. (*Id.* at 8–14). The City moved to dismiss, arguing that Plaintiffs lack standing and have failed

---

[1]   The Court accepts all factual allegations in the Complaint, (Dkt. No. 1), as true and views them in the light most favorable to the nonmovant, *see White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021).

[2]   The Complaint's references to "the City" encompass the City of Pharr Police Department, the City of Pharr Public Works Department, and the Texas Department of Family and Protective Services. (Dkt. No. 1 at 7).

to state a claim for relief. (Dkt. No. 7). Cundari and Piszczor responded, (Dkt. No. 10), and the City replied, (Dkt. No. 11).

## II.     LEGAL STANDARD

### A.     RULE 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "lack of subject-matter jurisdiction." When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject-matter jurisdiction is appropriate when the plaintiff does not "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217, 141 S.Ct. 740, 749, 209 L.Ed. 2d 33 (2021); *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021).

"When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, LLC v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

### B.     RULE 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[T]he pleading standard [that] Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965). "The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists." *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL 4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1965, 1974).

## III.    DISCUSSION

The Court first addresses the City's argument that Cundari and Piszczor lack standing. The Court concludes that Cundari has standing to assert claims under Section 1983, but that Piszczor does not. The Court then considers whether Cundari has stated a plausible claim for relief. She has not.

### A.    RULE 12(b)(1)

A party who has standing under Texas's wrongful death or survival causes of action also has standing to bring a claim under 42 U.S.C. § 1983. *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004). Because Section 1983 is silent on who may sue on behalf of a deceased person, federal courts are instructed to look to state law to fill in the gaps. *Id.*; *see also* 42 U.S.C. § 1988.

Texas recognizes two types of claims when someone dies due to another's actions: wrongful death and survival claims. *See* Tex. Civ. Prac. & Rem. Code §§ 71.002, 71.021. A wrongful death claim is brought by a decedent's "surviving spouse, children, [or] parents," Tex. Civ. Prac. & Rem. Code § 71.004(a), to compensate for their "loss of future pecuniary benefits, loss of inheritance, mental anguish, and loss of society and companionship." *Diaz ex rel. Diaz v. Mayor of Corpus Christi*, 121 F.App'x 36, 38–39 (5th

5

Cir. 2005) (per curiam) (quoting *Gandara v. Slade*, 832 S.W.2d 164, 167 (Tex. App.—Austin 1992, no writ)).  A survival claim, by contrast, belongs to the decedent's estate and redresses the decedent's injuries.  *Diaz*, 121 F.App'x at 38 (quoting *Gandara*, 832 S.W.2d at 167).

Because neither allege that they are a legal representative of Manteca's estate, Plaintiffs do not have standing to bring a survival action.  *See Diaz*, 121 F.App'x at 39. Plaintiffs instead rely on Texas's wrongful death statute.  (Dkt. No. 10 at 10) ("Plaintiffs Lorena Cundari and Michele Piszczor . . . bring claims rooted in their own severe emotional trauma, PTSD, and enduring psychological harm directly caused by witnessing their mother's and grandmother's preventable suffering and death.").

Cundari, as Manteca's daughter, (Dkt. No. 1 at 4), has standing to sue for wrongful death under Texas law and thereby has standing to assert her Section 1983 claims here. Piszczor, however, is Manteca's granddaughter.  (*Id.*).  Grandchildren are not among the classes of individuals authorized to sue under Texas's wrongful death statute.  Tex. Civ. Prac. & Rem. Code § 71.004(a); *see also Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996) (recognizing individuals "within the class of people entitled to recover under Texas's wrongful death statute" can sue under § 1983 for their own injuries).  Piszczor therefore lacks standing and her claims are **DISMISSED with prejudice**.

### B.    RULE 12(b)(6)

Now the Court must assess whether Cundari has satisfied the Rule 12(b)(6) pleading standards for each of her claims under 42 U.S.C. § 1983.  To state a cause of action under Section 1983, "a plaintiff must (1) allege the defendant violated 'a right

secured by the Constitution and the laws of the United States,' and (2) show 'a person

acting under color of state law' committed the violation." *Perdomo v. City of League City*,

765 F.Supp.3d 613, 620 (S.D. Tex. 2025) (quoting *Peterson v. Johnson*, 57 F.4th 225, 231 (5th

Cir. 2023)).  For the reasons discussed below, Cundari has not sufficiently pled her claims.

### 1. Count I – Deprivation of Substantive Due Process and Equal Protection *Monell* Claim – Failure to Train and Supervise[3]

Cundari alleges that the City's failure to adopt appropriate policies and to train its

employees regarding dangerous dogs amounted to deliberate indifference.  (Dkt. No. 1

at 8–9).  She characterizes the City's conduct as reflecting a longstanding policy of

inaction.  (Dkt. No. 10 at 5).  She claims that the City's systemic failure to enforce animal

control laws over a decade constitutes a de facto custom of deliberate indifference.  (*Id.*).

The City argues that Cundari failed to identify a specific official policy or a

widespread custom that caused the alleged constitutional violation.  (Dkt. No. 7 at 8, 10).

Further, Cundari's own pleadings show that the City did act by citing the dog owner and

declaring the dogs dangerous.  (*See* Dkt. No. 1 at 5–6).  And in any event, the City argues,

one prior incident from 2021 is legally insufficient to establish a pattern or custom for

*Monell* purposes.  (Dkt. No. 11 at 4).

A municipality cannot be vicariously liable under Section 1983 for its employees'

actions.  *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.E.2d 611

(1978).  Municipal liability exists only when an official policy or custom, adopted or

---

[3]    In her Response, Cundari labels her first count as simply "deliberate indifference."  (Dkt. No. 10 at 5).

maintained with deliberate indifference, is the "moving force" behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. at 2038).

An "official policy" can be shown in three ways. First, a promulgated policy statement, ordinance, or regulation whose enforcement violates one's constitutional rights. *Monell*, 436 U.S. at 660–61, 98 S.Ct. at 2020 (city issued a policy requiring pregnant employees to take unpaid leave before any medical need arose). Second, where no official policy exists, but a policy maker's action itself violates a constitutional right. *See Owen v. City of Independence*, 445 U.S. 622, 657, 100 S.Ct. 1398, 1418–19, 63 L.Ed.2d 673 (1980) (city council censured and discharged an employee without a hearing). Third, when a policy doesn't exist and the policymaker doesn't act, but the need to act is so obvious that doing nothing violates a constitutional right. *See City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). A custom, on the other hand, requires showing a "persistent, widespread practice . . . [that] is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).

A process of elimination is needed to understand Cundari's allegations. The Complaint does not specify a City policy, ordinance, or regulation relating to dangerous dogs. (*See generally* Dkt. No. 1). Nor does the Complaint name a City policymaker involved in the purported violation of her rights, or even use the word "custom" at all. (*See generally id*.). So, as the Court understands it, the Complaint alleges that the need to

act—*i.e.*, train its employees—was so obvious that failing to do so violated Manteca's constitutional rights.

To establish a failure to train claim, a plaintiff must plead facts showing that (1) the training was inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training procedures; and (3) the failure to train caused the constitutional injury. *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1007 (E.D. Tex. 1997) (citing *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (quoting *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997)).[4]

The Complaint alleges no facts about the City's training procedures, identifies no policymaker or his/her involvement, and pleads no pattern of similar constitutional violations. (*See generally* Dkt. No. 1). The Court therefore dismisses this claim without prejudice.

---

[4]    To be sure, without a pattern, a plaintiff "may proceed only under the 'single-incident exception'—a narrow and rarely successful theory that applies where the specific constitutional violation at issue was the highly predictable result of complete lack of training." *Thompson ex rel. Neveah T. v. Martinez*, 789 F.Supp.3d 491, 531 (W.D. Tex. 2025) (citing *Connick*, 563 U.S. at 63, 131 S.Ct. at 1361). This exception applies only in the "total absence of training," not a failure to train in a particular subject. *Id.* (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009)). Cundari does not allege that the City never trained its employees at all, but rather in the limited area of handling dangerous dogs. Therefore, the single-incident exception is not implicated here.

**2.** **Count II – Deprivation of Substantive Due Process and Equal Protection[5] Deliberate and Indifferent Conduct that Shocks the Conscience**

Cundari next alleges that the City's inaction "shock[s] the contemporary conscience" because officials were aware of the escalating danger posed by the dogs but deliberately refused to act.  (Dkt. No. 1 at 10).

Substantive due process liability in this context attaches only to conduct that is so egregious and outrageous "that it may fairly be said to shock the contemporary conscience."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, 118 S.Ct. 1708, 1717 n.8, 140 L.Ed.2d 1043 (1998).  Conduct that is intended to injure is likely to meet the conscience-shocking standard while negligently inflicted harm does not.  *Sterling v. City of Jackson*, 715 F.Supp.3d 918, 929 (S.D. Miss. 2024), *aff'd in part, rev'd in part and remanded on other grounds*, 159 F.4th 361 (5th Cir. 2025), *vacated reh'g en banc granted*, No. 24-60370, 167 F.4th 806 (5th Cir. Feb. 19, 2026); *see also id.* at 932 (quoting *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999) ("[W]hen someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause.")).

Here, Cundari does not allege that the City intentionally sought to injure Manteca, let alone any facts to support that conclusion.  (*See generally* Dkt. No. 1).  While Cundari alleges that the City "ignored credible reports of threats to [Manteca's] safety, failed to

---

[5]    In her Response, Cundari asserts that this claim is brought under the Due Process Clause of the Fourteenth Amendment.  (Dkt. No. 10 at 6).  No reference is made to the Equal Protection Clause.  (*See generally id.*).  Therefore, the Court will limit its analysis to Cundari's allegations in the context of the Due Process Clause.

enforce its own public safety regulations, and took no meaningful corrective action address the known hazard," these allegations amount to, at most, gross negligence. (*Id.* at 10). Gross negligence does not clear the "shocks the conscience" bar. *See Daniels v. City of Dallas*, 272 F.App'x 321, 322–23 (5th Cir. 2008) (per curiam). The Court therefore dismisses this claim without prejudice.

### 3.    Count III – Deprivation of Substantive Due Process and Equal Protection[6] Age-Based Discrimination

Cundari alleges that the City "failed to provide adequate protection to Estela Manteca who was of an elderly age, and who was in a vulnerable position." (Dkt. No. 1 at 12). Cundari also contends that Estela was treated "differently than similarly situated individuals who received timely and adequate protective services or responses." (*Id.*); (Dkt. No. 10 at 6) (invoking the "class-of-one" doctrine).

To succeed on an equal-protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently" under a statute. *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) (per curiam)). Generally, equal-protection claims "concern governmental classifications that impact groups of citizens in different ways." *Klinger v. Univ. of So. Miss.*, 612 F.App'x 222, 232 (5th Cir. 2015) (per curiam). But "age is not a suspect classification under the Equal Protection

---

[6]    In her Response, Cundari asserts this claim only under the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 10 at 6).

Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83, 120 S.Ct. 631, 646, 145 L. Ed. 2d 522 (2000).

The Complaint alleges that Manteca's rights were violated because of her age. (Dkt. No. 1 at 12).  But Cundari fails to allege any law or governmental action under which Manteca was treated differently because of her age, let alone any classifications that would impact groups of citizens disparately.  (*See generally* Dkt. No. 1).  In any event, age is not a suspect classification.  *Kimel*, 528 U.S. at 83, 120 S.Ct. at 646.

Nevertheless, "[a]n equal protection claim that is premised on differential treatment but not based on membership in a suspect class or the infringement of a fundamental right may be cognizable as a so-called 'class of one.'"  *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000)).  To state a "class-of-one" equal protection claim, a plaintiff must allege that the government intentionally treated her differently from others similarly situated and that no rational basis justified the differential treatment. *Wood*, 836 F.3d at 539 (quoting *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012)).

The Response changes course, arguing that Manteca's rights were violated by differential treatment as a "class-of-one."  (Dkt. No. 10 at 6).  This is particularly puzzling because under a claim originally labelled "age-based discrimination," (Dkt. No. 1 at 12), Cundari contends that Manteca was singled out for reasons that had nothing to do with her age, (Dkt. No. 10 at 6).  At any rate, Cundari fails to plead any facts establishing how Manteca was treated differently from other similarly situated individuals or even who

12

the similarly situated individuals were. (*See generally* Dkt. No. 1). Cundari thus fails to state a claim, and the Court dismisses this claim without prejudice.

### 4. Count IV – Deprivation of Substantive Due Process and Equal Protection[7] State-Created Danger

Finally, Cundari asserts a state-created danger theory, alleging that Aranda was "emboldened" by the City not responding to warnings about the dangerous dogs. (Dkt. No. 1 at 13).

The Fifth Circuit recently considered the state-created danger theory. *See Sterling*, 159 F.4th at 385–86.[8] To state such a claim, a plaintiff must plead facts to show a state actor affirmatively created or enhanced a danger unique to the plaintiff (as opposed to the general public) and that the conduct shocks the conscience. *Id.*

The Complaint recycles many of the same conclusory allegations previously raised in Cundari's *Monell* claim to support her "state-created danger" theory. *See supra* III(B)(1). In doing so, Cundari does not allege any affirmative act by a City official that created or enhanced a unique danger to Manteca. (*See generally* Dkt. No. 1). Nor does the alleged conduct plausibly rise to a level that shocks the conscience. *See supra* III(B)(2). The Court therefore dismisses this claim without prejudice.

---

[7]   In her Response, Cundari asserts this claim only under the Due Process Clause of the Fourteenth Amendment. (Dkt. No. 10 at 6).

[8]   The Court notes that the Fifth Circuit recently voted to rehear *Sterling* en banc and vacated the original panel opinion as a result. *See Sterling v. City of Jackson, Miss.*, 167 F.4th 806 (5th Cir. 2026) (mem.). As such, current Fifth Circuit precedent does not recognize the state-created danger theory. *Sterling*, 159 F.4th at 385–86 (noting that prior to its decision in *Sterling*, the Fifth Circuit had not adopted the theory). Regardless of the en banc court's eventual decision, however, Cundari fails to state a claim under this theory.

## IV.    CONCLUSION

The Court recognizes the terrible loss suffered by Estela Manteca's family, however, in light of the foregoing, the Court **GRANTS** the City's Motion to Dismiss for Failure to State a Claim for Relief.  (Dkt. No. 7).  Piszczor's claims are **DISMISSED with prejudice**.  (Dkt. No. 1).  Cundari's claims are **DISMISSED without prejudice**.  (*Id.*).

It is SO ORDERED.

Signed on March 31, 2026.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

14